## MISSOURI FIDELITY & CASUALTY CO. et al. v. SCOTT & SCOTT.

No. 8973—Opinion Filed Nov. 26, 1918.

Rehearing Denied Feb. 4, 1919.

(178 Pac. 122.)

(Syllabus.)

1 Corporations—Purchase of Realty Mortgages—Validity—Foreign Statute.

Under the provisions of section 7001, Rev. St. Mo. 1909, a contract made with the corporators or organization committee of a corporation, before the corporation is authorized to transact business, by the terms of which the corporation is to purchase real estate mortgages after it is authorized to do business, is void and not binding on the corporation or enforceable against it.

2. Contracts—Illegality—Enforcement.

In an action brought in which it is necessary to prove an illegal contract in order to maintain the action, the courts will not enforce it, nor will they enforce alleged rights springing directly from it.

3. Corporations—Void Contract — Adoption —Statute.

A resolution passed at a stockholders' meeting of a Missouri corporation, commending and approving in general terms all the acts of the incorporators and officers of the corporation, does not amount to an adoption of a contract made by the corporators which was void under the statute.

Error from District Court, Beckham County; T. P. Clay, Judge.

Action by Scott & Scott, a partnership, against the Missouri Fidelity & Casualty Company and the Southern Surety Company. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions to enter judgment for defendants below.

J. P. McCammon, for Missouri Fidelity & Casualty Co.

O. L. Rider, for Southern Surety Co.

W. R. Merrill, for Scott & Scott.

OWEN, J. This action was begun, in the district court of Beckham county, by Scott & Scott. a partnership, to recover damages for alleged breach of contract entered into by the partnership and the corporators of the Missouri Fidelity & Casualty Company, by the terms of which the company, after it was authorized to do business was to purchase from the partnership mortgages and real estate securities to the aggregate amount of $250,000, extending over a period of five years. Judgment below was for the plaintiffs.

The contract sued upon was entered into on the 10th day of February, 1910. The company was not authorized to do business under the laws of Missouri until March 1, 1911. The contract was executed in Missouri, and the question necessary for determination is the validity of the contract as construed under the Missouri statutes. Section 7001, Rev. Laws of that state of 1909, conceded to be the statute applicable. provides:

"* * * Upon the receipt of which they shall be a body politic and corporate, and may proceed to organize in the manner set forth in their charter and to open books for subscription to the capital stock of the company, and keep the same open until the whole amount specified in the charter is subscribed; but it shall not be lawful for such companies to issue policies or transact any business of any kind or nature whatever, except as aforesaid, until they have fully complied with the requirements of sections 7002 and 7003."

Sections 7002 and 7003 provide, in substance, for examination by the commissioner and for issuing the license or permit to do business. Section 7097 of the same statute provides:

"Every violation of any of the provisions of this chapter not otherwise specifically provided for shall be deemed a misdemeanor, and shall subject the individual, association of individuals or corporation violating the same to a penalty of not less than fifty nor more than five hundred dollars for each offense."

This statute was construed by the Supreme Court of Missouri in the case of Taylor v. Insurance Co., 266 Mo. 283, 181 S. W. 8, where suit was brought on a contract entered into by the promoters to pay a commission for the sale of stock in the insurance company. Referring to this section of the statute, the court said:

"Neither S. arnes nor his committee had any statutory power to do more than to open and keep open the subscription book. The power granted the original 'corporators' by these statutes is, not to sell stock at any agreed price, but to take subscriptions to stock in a proposed corporation, which may or not reach the point of a corporation. The power to open subscription books and receive subscriptions (and this is the only power conferred by statute) is not broad enough to authorize them to hire an agent to sell stock, for they had none to sell. * * * It may be a violent presumption, but it is one, nevertheless. that each citizen is presumed to know the law and must make his acts accord therewith. Knowing that the stock had not been subscribed, as plaintiff admits, he, under the law, knew that Starnes could not be acting otherwise than as a mere corporator. He knew that as to the proposed corporation these corporators were mere agents with limited power. He dealt with them therefore at his peril. If they, or either of them, made the contract with him, his benefit under the contract must be measured by the power of these agents to make it. If they had no such power, as we hold then he had no valid contract, and we so hold."

In the case of Downing v. Ringer, 7 Mo. 585, the Supreme Court of Missouri said:

"Any contract made in consideration of an act forbidden by law is absolutely void, and the illegality of the contract will constitute a good defense at law, as well as in equity."

The general rule is stated in 13 C. J. 420, as follows:

"Where a statute expressly declares that certain kinds of contracts shall be void, there is then do doubt of the legislative intention, and an agreement of the kind voided by statute is unlawful. * * * It is immaterial whether the thing forbidden is malum in se or merely malum prohibitum."

In the case of McMullen v. Hoffman. 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117. the Supreme Court of the United States said:

" * * * To permit a recovery in this case is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. * * * To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum."

At the first annual meeting of stockholders after the company had been authorized to do business, a resolution was passed ap-

proving and ratifying in general terms all the acts and transactions of the corporators and officers of the corporation, and commending them for their faithful and efficient service in selling the stock and organizing the company. It also appears after the company was authorized to do business it purchased and paid for some mortgages furnished by the partnership. It is urged by counsel that this resolution and the purchase of these mortgages constitute a ratification or adoption, on the part of the corporation, of the contract entered into by the promoters. In support of this contention, they rely principally upon the case of Van Noy v. Insurance Co., 168 Mo. App. 287, 153 S. W. 1090, where, in compromise of claims made under a contract entered into with the "corporators," a new contract was entered into after the corporation was authorized to do business. It was held this constituted an adoption of the contract, and, receiving the benefits thereunder, the corporation was liable, citing with approval the case of Furn. Co. v. Crawford, 127 Mo. 356, 30 S. W. 163, where it was held that:

"Strictly speaking, there can be no ratification by a corporation of a contract formed by its promoters prior to the completion of the corporate organization. The so-called ratification by the corporation is nothing more' nor less than the making of an original contract. The fact that the corporation makes the same contract theretofore made by its promoters does not constitute a ratification, but it is an original contract of the corporation."

In that case it was also said:

"Persons associated to form a corporation, but who contract with third persons in advance of such formation, may be held liable to the latter as partners."

Another case relied upon by defendants in error is that of Contract Co. v. Construction Co., 150 Mo. App. 505, 131 S. W. 134. In that case the corporation was the plaintiff and sued for the breach of a contract made with its promoters. It was held that the defendant could not be heard to say the contract which it had made with plaintiff's promoters was illegal, because it appeared that plaintiff, after being authorized to do business, had adopted the contract and undertaken to perform it. Another case cited is that of Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, where a contract for certain machinery and fixtures was made with the promoters for the use and benefit of the corporation, and the corporation received the machinery after its organization. The action was against the promoters and they were held not to be liable personally. The cause

of action was against the corporation which had received the benefits under the contract. The facts in those cases easily distinguish them from the instant case.

Plaintiffs' cause of action here, if any they had, was against the promoters, and not against the corporation. Had the corporation received the benefits by taking the mortgages provided for in the contract, it would have been liable for the purchase price. That would have amounted to an adoption of the contract made by the promoters and equivalent to the making of a new contract by the corporation. No such condition exists. On the contrary, the refusal of the company to take the mortgages under the contract is the basis of this action. Purchasing and paying for a few mortgages from the partnership and passing the commendatory resolution falls far short of an adoption of the contract which was void under the statute. Neither does it amount to a ratification of this illegal contract. Elliott on Contracts, § 457, says:

"If the act of an agent is for any reason absolutely void, if the principal or no one else could have lawfully done the act, no subsequent affirmation can give it force and effect. This is especially true where the contract is contrary to law or against public policy."

Again, in section 1089, the same author says:

"It is a general rule of law that a contract made in violation of a statute is void, and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract he cannot recover. Consequently, a contract which is in reality illegal cannot, properly speaking, be ratified."

In the case of Stewart v. Rawleigh Med. Co., 58 Okla. 344, 159 Pac. 1187, L. R. A. 1917A, p. 1276, the Chief Justice, speaking for this court, said:

"Plaintiff's recovery is predicated upon the illegal agreement. The contract is referred to and made the basis of its cause of action. Aside from the contract, there was no liability on the part of the guarantors. Against them, plaintiff had no claim, except through the medium of an illegal agreement. * * * It is well settled that, where it is necessary to prove an illegal contract in order to maintain an action, courts will not enforce it nor will they enforce alleged rights directly springing from such contract."

The Supreme Court of Missouri in the case of Bick v. Seal, 45 Mo. App. 475, held that an illegal contract cannot be ratified and a subsequent promise to perform was not binding. There it was said:

"The principle is that, where the original

promise is tainted with illegality, it cannot be ratified by a new promise. As was said by Chief Justice Beas'ey: 'There is undoubtedly a class of claims which, having a moral but no legal efficacy, can be the subject of ratification. But it is to be remembered that the effect of a ratification is to impart validity to the original agreement. Such act creates no new obligation; it merely extends the continuance of, or legalizes, one already in existence. * * * It follows, therefore, as a consequence which is entirely unavoidable, that there can be no such thing in law, strictly speaking, as a ratification of a transaction which, at the time of its performance, was prohibited by statute. The parties cannot legalize that which the law has declared illegal.'"

To the same effect are the cases of Gwinn v. Simes, 61 Mo. 335; Moog v. Hannon's Adm'r, 93 Ala 503, 9 South. 596; Union Coll. Co. v. Buckman. 150 Cal. 159, 88 Pac. 708, 9 L. R. A. (N. S.) 568, and note, 119 Am. St. Rep. 164, 11 Ann. Cas. 609.

At the conclusion of the evidence both plaintiffs in error, defendants below, moved the court for peremptory instructions. These motions should have been sustained.

The judgment of the lower court is therefore reversed and the cause remanded, with directions to enter judgment for the plaintiffs in error, the defendants below.

All the Justices concur, except TURNER and BRETT, JJ., not participating.